IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Caroline Bowen; Holly Saleeby Atkins; Thomas S. Tisdale, Jr.; Edward S. McDonnell and Catherine McDonnell; Nelson R. Parker; and John Calhoun Land, IV, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Ashley F. Houser; Thomas E. Connelly, Jr.; James F. Hardman; Thomas C. Jackson; Adelaide Cox McMaster; Thomas E. Peeples; David R. Renaker; Gary L. Rowe; Brian R. Samson; Stanley R. Smith; and J. Emory Ware, individually and as Officers and Directors of BankMeridian, N.A., <br><br> Defendants. | C.A. No. 3:10-02398-MBS <br><br><br> **ORDER AND OPINION** |

## BACKGROUND

Plaintiffs Caroline Bowen; Holly Saleeby Atkins; Thomas S. Tisdale, Jr; Edward S. McDonnell; Catherine McDonnell; Nelson R. Parker; and John Calhoun Land, IV filed the within class action lawsuit in the South Carolina Court of Common Pleas for Richland County in August 2010 against Defendants Ashley F. Houser; Thomas E. Connelly, Jr.; James F. Hardman; Thomas C. Jackson; Adelaide Cox McMaster; Thomas E. Peeples; David R. Renaker; Gary L. Rowe; Brian R. Samson; Stanley R. Smith; and J. Emory Ware, individually and as officers and directors of BankMeridian, N.A. ("BankMeridian"). Plaintiffs allege causes of action for: 1) negligence; 2) breach of fiduciary duty; 3) improper hiring, supervision, retention and failure to monitor actions of officers (against BankMeridian directors only); and 4) removal of the BankMeridian directors

(against BankMeridian directors only). In addition, Plaintiffs seek actual damages, punitive damages, costs, and attorney's fees. Amend. Compl. at 22-23. Defendants removed this case on September 14, 2010 based upon federal question jurisdiction and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §§ 1331, 1332(d).

This matter is before the court on Plaintiffs' motion to remand, which was filed on September 20, 2010. On October 18, 2010, Defendants filed their response in opposition to Plaintiffs' motion to remand. On October 28, 2010, Plaintiffs filed their reply in support of remand. On November 16, 2010, the court held a hearing on Plaintiffs' motion to remand and held a ruling in abeyance pending the receipt of additional information from the parties. The court subsequently entered a text order granting Defendants twenty (20) days to more specifically demonstrate the basis of their assertion that CAFA's minimal diversity and the amount in controversy requirements have been met including inquiring into the residency of the actual owners of the stock. The court also granted Plaintiffs thirty (30) days for limited discovery on the application of CAFA's exceptions to jurisdiction.

Subsequent to an extension of time for both parties, on December 16, 2010, Defendants filed a supplemental response in opposition to remand. On December 28, 2010, Plaintiffs filed a supplemental response in support of remand. On January 7, 2011, Defendants filed a sur reply in opposition to remand.

**FACTS**

Plaintiffs define the class as "all persons and/or entities who own, or previously owned, as of January 1, 2008, common stock in BankMeridian and who were harmed by the conduct alleged herein in an amount that exceeds $100 for each member of the Class." Amend. Compl. ¶ 40.

Plaintiffs do not include any of the individual defendants who own stock in the class. *Id.* ¶ 41. When BankMeridian was initially capitalized by way of a stock offering of "approximately 3,100,00[0] shares of stock, which shares were sold for Ten and 00/100 ($10.00) dollars each." Amend. Compl. ¶ 25.

Defendants have filed the affidavit of Jan C. Burt ("Burt"),[1] BankMeridian's Chief Administrative Officer in support of their jurisdictional arguments. Burt Aff. ¶ 1, October 16, 2010. Burt's affidavit states in relevant part:

> As of December 31, 2009, BankMeridian had 425 registered shareholders.
>
> . . .
>
> As of September 1, 2010, BankMeridian had 418 registered shareholders, 166 of whom (39.7%) have stock registered out of state, and the remainder of whom have stock registered in South Carolina.
>
> . . .
>
> Seven of the 418 shareholders held 100 or less shares on September 1, 2010. None of the shareholders owning 100 or less shares have addresses out of state.
>
> . . .
>
> Emory Ware is not a shareholder of BankMeridian. Each of the other persons listed above as a defendant is a shareholder of BankMeridian.

Burt Aff. ¶ 2, October 16, 2010. Defendants have provided to Plaintiffs four official lists of registered shareholders dated: January 1, 2008, January 2, 2008, August 31, 2010 and September 1, 2010, which are maintained by BankMeridian's transfer agent. As of September 1, 2010, approximately when this action was filed, there were 408 potential class members, not including Defendants. Of this number, 242 shareholders have their BankMeridian stock registered in South

---

[1] The affiant signed her name as Janice. C. Burt.

3

Carolina. Defendants have provided Plaintiffs with an undated, unofficial mailing list of beneficial owners of BankMeridian stock. Plaintiffs argue that by cross-referencing the unofficial mailing list with the official lists of registered shareholders they have discovered that forty-nine of the shareholders who have registered their stock outside of South Carolina have mailing addresses in South Carolina. Plaintiffs assert that of these forty-nine shareholders who have stock registered out of state, but have mailing addresses in South Carolina, eight are members of the South Carolina bar who practice frequently before this court. Entry 30 at 9, 11, 12, 13, 14.

## DISCUSSION

Plaintiffs seek the remand of this case to the Richland County Court of Common Pleas. The removing party bears the burden of establishing federal jurisdiction. *See Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008). A defendant may remove a case only if the claim could have been brought in federal court on the basis of federal question jurisdiction or diversity jurisdiction. 28 U.S.C. § 1441(b); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[C]ourts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (internal citation omitted).

### I.     Federal Question Jurisdiction

Defendants contend that this case arises under federal law because "each of the plaintiffs' causes of action necessarily depends on the resolution of substantial questions of federal law under the National Bank Act." Def. Resp. to Mot. to Remand at 11. Defendants argue that "[a]s a national banking association, BankMeridian's operations, and the activities of the defendants in managing the bank, are governed by the National Bank Act and controlled by the [Office of the Comptroller of the Currency] [(]OCC[)]." Def. Resp. to Mot. to Remand at 12. Defendants further argue that

4

adjudication in federal court will "promote the federal policies embodied in the National Bank Act and the OCC's reticulated regulatory scheme." Def. Resp. to Mot. to Remand at 11.

In determining whether federal question jurisdiction exists, courts look to the allegations in the plaintiffs' well-pleaded complaint to determine whether an action "arises under" federal law or the Constitution. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). The well-pleaded complaint rule provides that a cause of action "arises under" federal law and removal is proper, only if a federal question is presented on the face of the plaintiffs' properly pleaded complaint. *Id.* at 9-12. The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. A federal defense to the plaintiffs' well-pleaded complaint is not a basis for federal question jurisdiction. *Louisville & Nashville Ry. Co. v. Mottley*, 211 U.S. 149 (1908); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006).

In examining the complaint, the court must first determine "whether federal or state law creates the cause of action." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). "If federal law creates [] plaintiff[s'] claim, then removal is proper." *Id.* If federal law does not create the plaintiffs' claim, the court must determine whether the case "fall[s] within the small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff[s'] right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims.'" *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)).

Plaintiffs allege state law causes of action for negligence, breach of fiduciary duty, improper hiring and supervision, and removal of directors. Plaintiffs do not specifically state a cause of action

5

under the National Bank Act. Therefore, the court must determine whether any of Plaintiffs' claims necessarily depend on the resolution of a substantial question of federal law.

The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). The Fourth Circuit has stated that a defendant must show two required elements in order to remove a case in which state law creates the plaintiffs' cause of action: 1) "that the plaintiff[s'] right to relief necessarily depends on a question of federal law," and 2) "that the question of federal law is substantial." *Pinney*, 402 F.3d at 442. "[] plaintiff[s'] right to relief necessarily depends on a question of federal law when it appears that some disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Pinney*, 402 F.3d at 442. "If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." *Id.* at 442. Thus, a claim supported by alternative theories in the complaint may not form the basis for federal jurisdiction unless federal law is essential to each of those theories. *Christianson*, 486 U.S. at 810. Mere connection between a claim and a federal regulatory regime is an insufficient basis for federal jurisdiction. *Pinney*, 402 F.3d at 448.

Several cases have examined whether the determination of a question of federal law is necessary to one or more state law claims. In *Franchise Tax Board*, the Supreme Court found that there was no federal question jurisdiction when a California tax agency attempted to enforce a levy on funds held in trust for taxpayers under an ERISA benefit plan. 463 U.S. at 13-14. The Court found that the claim did not necessarily depend on the resolution of a federal law issue because "California law establishe[d] a set of conditions, without reference to federal law, under which a tax

levy may be enforced; federal law bec[ame] relevant only by way of a defense to an obligation created entirely by state law, and then only if [the state agency] . . . made out a valid claim for relief under state law." *Id.* at 13.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing Co.*, 545 U.S. 308 (2005), the Supreme Court found that a case invoked federal question jurisdiction when a state quiet-title action was premised solely upon a failure by the Internal Revenue Service to give adequate notice of sale under federal law. *Id.* at 314. The Court noted that "[w]hether Grable was given notice within the meaning of the federal statute [was] . . . an essential element of its quiet title claim, and [that] the meaning of the federal statute [wa]s actually in dispute[] [and] it appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 315. The Court also found that the meaning of the federal tax provisions "is an important issue of federal law that sensibly belongs in a federal court." *Id.*

In *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811 (4th Cir. 2004), the Fourth Circuit examined whether federal question jurisdiction is invoked by claims under S.C. Code Section 16-17-560, which makes it "unlawful for a person to . . . discharge a citizen from employment or occupation . . . because of political opinions or the exercise of political rights and privileges guaranteed . . . by the Constitution and laws of the United States or by the Constitution and laws of [South Carolina]." *Id.* at 814-15. The Fourth Circuit first noted that the plaintiff's cause of action was not created by federal law. *Id.* at 816. The Fourth Circuit went on to find that the plaintiff's causes of action did not necessarily require the determination of an issue of federal law because the complaint could support a finding of liability under Section 16-17-560 if the plaintiff were fired 1) because of his political opinions, or 2) for exercising his political rights guaranteed by the Constitution of South

Carolina. *Id.* at 818. Under either of these theories, the plaintiff did not need to show that he was fired for exercising political rights guaranteed by the United States Constitution. *Id.*

Plaintiffs' causes of action do not necessarily depend upon a substantial question of federal law. This is because a violation of the National Bank Act need not be found in order for liability to be imposed in this case. Although Plaintiffs point to deficiencies found by the Comptroller of the Currency in support of their claims, Plaintiffs may prove their claims without showing that the National Bank Act was violated. Plaintiffs' Amended Complaint contains allegations that are not based upon violations of the National Bank Act. If true, these allegations could lead a finder of fact to hold Defendants liable to Plaintiffs under each of Plaintiffs' causes of action based solely upon state law. Specifically, in the Amended Complaint, Plaintiffs allege:

> 31.    . . . BankMeridian reported for the year 2009 the provision charged for loan losses to expense was $6,895,100 as compared with $2,656,015 for 2008. The provision for loan losses is the charge to operating earnings that BankMeridian believes is necessary to maintain the allowance for possible loan losses at an adequate level.
>
> 32.    In the same 2009 Annual Report, management of BankMeridian . . . further reported it transferred loans in the amount of $3,484,568 to other real estate owned (OREO) in 2009 compared to $456,385 in 2008. BankMeridian also reported that interested parties (certain officers and directors, their immediate families and business interests) had outstanding loans as of December 31, 2009 in the amount of $23,243,968.
>
> 33.    In 2009, BankMeridian incurred a net loss of $9,030,790 as compared to a loss of $1,061,828 in 2008. In the first three (3) months of 2010, BankMeridian lost $844,000.
>
> 34.    In the first three (3) months of 2010, BankMeridian has charged off $642,000 in loans and leases while recovering only $24,000 on loans and leases.

Amend. Compl. ¶¶ 31-34. Moreover, in ¶¶ 35-38 of the Amended Complaint, Plaintiffs allege that Bankrate has evaluated BankMeridian based upon several factors and found it to be performing at

a level far below its average peer group banks. All of these allegations could allow a finder of fact to determine by a preponderance of the evidence that the officers of BankMeridian were taking unnecessary or unacceptable risks, in breach of their duties to the bank's shareholders, and that BankMeridian's directors improperly hired and retained the officers in violation of their duties to the shareholders, all in violation of state law.

Defendants cite several cases in support of their argument that there is federal question jurisdiction in this case. Defendants contend that *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007) stands for the proposition that "[s]tate law applies to national banks only to the extent it does not conflict with the purposes of the National Bank Act, and does not interfere with the OCC's regulation of national banking institutions." Def. Resp. to Mot. to Remand at 12. Contrary to Defendant's contention, *Watters* recognizes that "[b]usiness activities of national banks are controlled by the National Bank Act . . . and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC)." *Id.* at 6. With regard to state law, *Watters* merely states that:

> States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way.

*Id.* at 12. Thus, while states' ability to regulate national banks is limited, *Watters* does not indicate that all state tort claims against national banking associations invoke federal question jurisdiction.

Defendants cite *Huff v. Union National Bank of Oakland*, 173 F. 333 (N.D. Cal. 1909) and *Chesbrough v. Woodworth*, 244 U.S. 72 (1917) to support their position that allegations that directors of a national bank made loans and paid dividends in violation of the National Bank Act have been held to present a federal question sufficient to invoke a federal court's subject matter

jurisdiction. *Huff* and *Chesbrough* are distinguishable because the case before the court involves state-law claims that are based only in part on violations of the National Bank Act. In both *Huff* and *Chesbrough*, the plaintiffs specifically alleged violations of the National Bank Act, meaning that a federal statute was directly at issue. *Huff,* 173 F. at 335; *Chesbrough*, 244 U.S. at 73-74. Based upon the foregoing, the court concludes that federal question jurisdiction does not exist in the present case.

## II.    CAFA

Defendants contend that this court has diversity jurisdiction under CAFA. Def. Resp. to Mot. to Remand at 1. Congress enacted CAFA in 2005 as an attempt to curb abuse in class actions and keep cases of national importance in federal court. *See Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008). The most notable changes created by CAFA are the amended diversity requirements and the more lenient standard for removing class actions to federal court. *Id.* For class action suits, CAFA eliminated two traditional limitations on removal: 1) the rule that in a diversity case a defendant cannot remove from his home state, and 2) the rule that all defendants must consent to removal. *See* 28 U.S.C. § 1453(b); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 331-32 (4th Cir. 2008). The removing party must meet three general requirements for a district court to possess jurisdiction under CAFA: 1) the aggregate amount in controversy must exceed $5,000,000, 2) minimal diversity must exist, and 3) the number of class members must exceed 100. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). Plaintiffs concede that the general requirements for CAFA have been met. *See* Plaintiffs' Supplemental Memorandum of Law in Support of Motion to Remand and for Attorney's Fees, Entry 30, at 6. Therefore, the burden shifts to the plaintiffs to establish, by a preponderance of the evidence, one or more of the CAFA exceptions to jurisdiction. *See Advance*

*Am.*, 596 F. Supp. 2d at 930.

      A.      <u>The Local Controversy and Home State Exceptions</u>

Plaintiffs contend that the court must remand this case under CAFA's local controversy and home state exceptions. Mot. to Remand at 10; Pl. Supp. Mem. at 3, 4-5. CAFA's local controversy exception provides that a district court shall decline to exercise jurisdiction over a class in which a) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed"; b) "at least 1 defendant is a defendant– (aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and"; c) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A). Under CAFA's home state exception, courts must decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

With regard to the local controversy exception, Plaintiffs contend that it is undisputed that: 1) Defendants are citizens and residents of South Carolina, 2) Defendants are parties from whom significant relief is sought, 3) Defendants' conduct forms a significant basis for the claims asserted, and 4) that there have not been any other class actions filed in the last three years asserting similar claims. Pl. Supp. Mem at 5. Defendants do not contest this contention. *See* Def. Sur Reply. With

regard to the home state exception, the parties agree that Defendants are citizens of the state in which the action was originally filed, which is South Carolina. *See* Amend. Compl. ¶¶ 14-23; Def. Resp. to Mot. to Remand at 3 ("All eleven defendants are citizens of South Carolina."). As a result, the sole remaining issue with respect to the application of both the local controversy and home state exceptions is whether greater than two-thirds of the members of the proposed class are citizens of South Carolina.

For the purposes of diversity jurisdiction, "[t]o be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State." *Advance Am.*, 549 F.3d at 936 n.2 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)). "Domicile requires physical presence, coupled with an intent to make the State a home." *Id.* Several factors have been used as evidence of intent to make a state a home including: "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Midwest Transit, Inc. v. Hicks*, 79 F. App'x 205 (7th Cir. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8 (1st Cir. 1991); 13B Charles Alan Wright et al., Federal Practice and Procedure § 3612 (2d ed.1984)); *see also Preston v. Tenet Healthsystem Meorial Medical Center, Inc.*, 485 F.3d 793, 797-98 (5th Cir. 2007) (in determining intent, district courts can consider "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."). However, residency by itself is insufficient to establish citizenship. *Advance Am.*, 549 F.3d at 936 n.2.

Plaintiffs contend that Defendants have admitted that 252 of BankMeridian's 418 shareholders, or 60.3%, had their stock registered in South Carolina as of September 1, 2010. Pl. Supp. Mem. at 6 (citing Def. Resp. to Mot. to Remand at 2).[2] Therefore, Plaintiffs argue that they need only show that twenty-seven additional shareholders are citizens of South Carolina to meet to statutory threshold of two-thirds. *Id.* By cross-referencing Defendants' "unofficial" mailing list with the official shareholder lists, Plaintiffs have determined that forty-nine of the shareholders who own BankMeridian stock that is registered out of state have mailing addresses in South Carolina. Pl. Supp. Mem. at 7-14. Plaintiffs therefore argue that these shareholders are South Carolina citizens, allowing Plaintiffs to meet the two-thirds threshold. Pl. Supp. Mem at 14. Plaintiffs also note that nine of the shareholders who have their stock registered out of state, but have mailing addresses in South Carolina are members of the South Carolina bar and practice frequently before this court.

Plaintiffs have not submitted to the court evidence sufficient to show that an additional twenty-seven members of the proposed class are citizens of South Carolina. Plaintiffs have provided evidence that forty-nine class members reside in South Carolina, but residency is insufficient to establish domiciliary intent. *Advance Am.*, 549 F.3d at 936 n.2. In addition, although active membership in the South Carolina bar is evidence of domiciliary intent, Plaintiffs have only asserted that nine shareholders who have stock registered out of state are active members of the South Carolina bar. Plaintiffs have not met the two-thirds citizenship threshold for the local controversy and home state exceptions because they have not submitted to the court sufficient evidence of domiciliary intent.

---

[2] The court's review of Defendants' response reveals that Defendant has admitted that 242, or 59.3% of BankMeridian's shareholders have stock registered in South Carolina. *See* Def. Resp. at 7.

13

B.  The Discretionary Jurisdiction Exception

Plaintiffs contend that the court should decline to exercise jurisdiction in this case under § 1332(d)(3). Pl. Reply to Mot. to Remand at 8; Pl. Supp. Mem. at 5, 6. Title 28 United States Code, Section 1332(d)(3) provides:

> [a] district court may, in the interest of justice and looking at the totality of the circumstances, decline jurisdiction . . . over a class action in which greater than one-third . . . of all proposed plaintiff classes in the aggregate and primary defendants are citizens of the State in which the action was originally filed based on consideration of [a number of factors].

*Id.* Thus, CAFA's discretionary jurisdiction exception requires that more than one-third of the class members and the primary defendants be citizens of the state in which the action was originally filed. In addition, in looking at the totality of the circumstances, courts consider several factors in exercising its discretion to remand including: 1) "whether the claims asserted involve matters of national or interstate interest;" 2) "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;" 3) "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;" 4) "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;" 5) "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and" 6) "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." *Id.*

The parties agree that more than one-third of the proposed class and all of Defendants are

citizens of South Carolina. Pl. Supp. Mem. at 6 (citing Def. Resp. at 2); Def. Resp. to Mot. to Remand at 3, 7-10; Amend. Compl. ¶¶ 14-23. Therefore, the court will consider the interests of justice and the totality of the circumstances in determining whether this case should be remanded to state court.

With regard to the first discretionary factor (the national interest factor), this case does not necessarily involve the interpretation of federal law, specifically the National Bank Act. The claims in this case are state law claims of negligence and breach of fiduciary duty, which are governed by state law. Therefore, the national interest factor supports remand. The second discretionary factor (the state law governance factor), also supports remand. South Carolina law, as opposed to the laws of other states will apply because Plaintiffs' claims are based on events that occurred in South Carolina. The third discretionary factor (the federal jurisdiction avoidance factor), weighs in favor of remand because there is no evidence that this case was pleaded to avoid federal jurisdiction. Plaintiffs could have restricted the amount in controversy to under $5,000,000 if they intended to avoid federal jurisdiction, but they did not do so.[3] *See* S.C. R. Civ. P. 8 (". . . a party may plead that the total amount in controversy shall not exceed a stated sum which shall limit the claim for all purposes."); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (a plaintiff can "resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."). The fourth discretionary factor (the nexus factor), supports remand because a large portion of the potential class is from South Carolina, all of the class members purchased stock in a bank that only has branches in South Carolina, and all of the

---

[3] Although Defendants contend that Plaintiffs have attempted to avoid federal jurisdiction through the artful pleading by alleging state law claims based solely upon federal law violations. This argument is without merit. As was discussed above, a finder of fact need not find any violations of the National Bank Act in order to hold Defendants liable under state law.

3:10-cv-02398-MBS     Date Filed 02/03/11    Entry Number 32     Page 16 of 16

Defendants are South Carolina citizens. The fifth discretionary factor (the forum citizenship factor) is neutral because the court does not have information on the citizenship of all of the class members to make the necessary determination. The sixth discretionary factor weighs in favor of remand because Defendants do not dispute Plaintiffs' contention that no other similar class actions have been filed within the past three years. Based upon the foregoing, the court exercises its discretion to remand this case to state court.

        5.    *Attorney's Fees*

Plaintiffs contend that the court should award attorneys' fees and costs incurred in defending the improper removal of this case. Mot. to Remand at 24. Section 1447(c) provides that a remand order "may" require payment of attorney's fees. *Id.*; *see also Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin*, 546 U.S. 132, 136 (2005). Defendants have met CAFA's general requirements and Plaintiffs have not successfully shown that remand is required under § 1332(d)(4). Therefore, Defendants had an objectively reasonable basis for removal. The court declines to award attorney's fees in this case.

**IT IS SO ORDERED.**

                                               s/ Margaret B. Seymour
                                               The Honorable Margaret B. Seymour
                                               United States District Judge

February 3, 2011
Columbia, South Carolina

16